1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON AT SEATTLE**

| | |
|---|---|
| V.G., an individual,<br><br>                    Plaintiff,<br><br>   v.<br><br>LYFT, INC., a Delaware Corporation; and<br>DOES 1 through 50, Inclusive,<br><br>                    Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND**<br>**DEMAND FOR JURY TRIAL**<br><br>  **1. GENERAL NEGLIGENCE**<br>  **2. NEGLIGENT HIRING, RETENTION,**<br>     **AND SUPERVISION**<br>  **3. COMMON CARRIER NEGLIGENCE**<br>  **4. INTENTIAL MISREPRESENTATION**<br>  **5. STRICT PRODUCT LIABILITY –**<br>     **DESIGN**<br>  **6. STRICT PRODUCT LIABILITY –**<br>     **FAILURE TO WARN** |

Plaintiff, V.G., an individual, by her undersigned counsel, makes the following Complaint against

Defendants Lyft, Inc. ("Lyft"), a Delaware Corporation, and DOES 1 through 50, (collectively, "Lyft"

or "Defendants"), alleging as follows:

## I.      NATURE OF ACTION

1.      Plaintiff was forced to perform oral copulation by a Lyft driver with whom she had been

paired through the Lyft App. As a common carrier, Lyft bears vicarious liability for the injuries its driver

inflicted upon Plaintiff. Moreover, through the acts and omissions of its officers, directors, and managing

agents, Lyft directly contributed to the assault on Plaintiff by breaching and abandoning its highest duty

of care owed to its passengers.

2.      Lyft, Inc. is a transportation company headquartered in San Francisco, California, and is

COMPLAINT FOR DAMAGES - 1

**PFAU COCHRAN**
**VERTETIS AMALA**
ATTORNEYS AT LAW

701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

among the fastest-growing companies in the United States. As early as 2015, Lyft became aware that certain Lyft drivers were engaging in sexual assaults and rapes of female passengers. Since that time, sexual predators operating as Lyft drivers have continued to commit such assaults against female passengers. For more than eight years, Lyft has had knowledge of these ongoing acts of sexual violence committed by its drivers. Complaints lodged by female passengers, together with subsequent criminal investigations conducted by law enforcement, conclusively demonstrate that Lyft has been fully aware of the persistent and continuing assaults perpetrated by sexual predators driving for Lyft.

3.     Lyft's response to the sexual predator crisis within its driver workforce has been grossly inadequate. The company continues to hire drivers without conducting sufficient background checks, permits drivers accused of misconduct to remain on the platform, and, most critically, has failed to implement and enforce reasonable driver monitoring measures necessary to safeguard passengers. As a direct result of these omissions, Lyft passengers remain vulnerable and continue to be subjected to sexual assaults and rapes by Lyft drivers.

4.     As more fully set forth below, Plaintiff was forced to perform oral copulation by the Lyft driver she was led to believe would give her a safe ride to her destination.

5.     The Lyft ride at issue was ordered for Plaintiff through the ride-sharing software application owned and controlled by Lyft ("the Lyft App").

6.     At all relevant times Lyft operated and controlled the Lyft App.

7.     The Lyft driver, while in the course and scope of his employment for Lyft and while otherwise working on behalf of Lyft, forced Plaintiff to perform oral copulation as set forth below.

8.     Plaintiff brings this civil action against Lyft to recover damages for the injuries and damages she sustained as a direct result of being forced to perform oral copulation by the Lyft driver.

COMPLAINT FOR DAMAGES - 2

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

## II.   PARTIES

9.     Plaintiff V.G. is over the age of 18 and is a citizen of Washington. The assault described below took place in the state of Washington.

10.     Defendant Lyft, Inc. is a Delaware corporation with its corporate headquarters, principal office, and principal place of business at 185 Berry Street, Suite 400, San Francisco, California 94107.

11.     The true names and capacities whether individual, plural, corporate, partnership, associate, or otherwise, of Defendants sued herein as Does 1 through 50, inclusive, are presently unknown to Plaintiff. Accordingly, Plaintiff sues these Defendants under such fictitious names. The full extent of the facts connecting these fictitiously named Defendants to the matters alleged herein is likewise unknown at this time. Plaintiff is informed and believes, and on that basis alleges, that each Doe Defendant was negligent or otherwise engaged in actionable conduct that contributed to and legally caused the injuries and damages described herein. Once the identities and capacities of these Defendants are ascertained, Plaintiff will seek leave of Court to amend this Complaint to substitute their true names and capacities.

12.     Plaintiff is informed and believes, and thereon alleges, that at all relevant times each Defendant was acting as the agent, servant, licensee, employee, assistant, consultant, and/or alter ego of every other Defendant, and that each was acting within the course and scope of such relationship when the acts and omissions causing Plaintiff's injuries occurred.

13.     Plaintiff is informed and believes, and thereon alleges, that each Defendant, when acting in the capacity of a principal, was negligent in the selection, hiring, supervision, and/or retention of every other Defendant serving as its agent, servant, employee, assistant, or consultant.

14.     Plaintiff is further informed and believes, and thereon alleges, that at all relevant times each Defendant, acting through its officers, directors, supervisors, and managing agents, and each individual Defendant, possessed advance knowledge of the wrongful conduct, psychological tendencies, and

COMPLAINT FOR DAMAGES - 3

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

behavioral propensities of their respective agents, servants, licensees, employees, assistants, consultants, and alter egos. Despite such knowledge, these Defendants permitted wrongful conduct to occur and to continue, thereby ratifying it.

15.    After becoming aware of such conduct, each Defendant, through its officers, directors, supervisors, and managing agents, and each individual Defendant, expressly authorized and ratified the wrongful acts that caused injury to Plaintiff. Defendants are liable for one another's acts under the doctrines of *respondeat superior*, agency, ostensible agency, partnership, alter ego, and other applicable principles of vicarious liability.

16.    The Lyft driver who perpetrated the assault described herein ("Lyft driver") was an agent, servant, and employee of Lyft.

17.    This Complaint refers to Defendant Lyft, Inc., and Does 1 through 50, inclusive, as Defendants.

## III.    JURISDICTION AND VENUE

18.    The Court has jurisdiction under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship of the parties as no single defendant is from the same state as any single plaintiff.

19.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. Plaintiff's assault described below took place in Tacoma, Washington.

## IV.    RELEVANT FACTUAL BACKGROUND

### *Lyft's Inadequate Safety Precautions and Inadequate Screening*

20.    Lyft operates as a transportation service in which passengers pay a fee in exchange for safe conveyance to their destination. The fare charged to riders for each trip is divided between Lyft and the

COMPLAINT FOR DAMAGES - 4

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

Lyft driver. Lyft publicly represents that "safety is our top priority" and that its goal is "to make every ride safe, comfortable, and reliable." In reality, Lyft prioritizes profits over passenger safety. As a direct consequence, Plaintiff and other female passengers remain at risk and continue to be victimized by sexual predators driving for Lyft.

21.    In the face of this sexual predator crisis, numerous reasonable safety measures were available that any prudent transportation company would have adopted to mitigate the danger. Nevertheless, Lyft's corporate management has failed to implement even the most basic and readily available safety procedures to address the escalating problem of sexual assaults committed by Lyft drivers who are sexual predators.

22.    For example, to this day Lyft hires drivers with virtually no meaningful screening process. Prospective drivers simply complete an online application form. There is no in-person interview, nor any interview conducted through online platforms such as Skype or Zoom. Background checks, where performed, are inadequate, and no biometric fingerprinting is required. As a result, the vast majority of online applicants are approved to drive for Lyft.

23.    Once an applicant is approved to drive for Lyft, the company fails to employ its own available technology, such as in-car cameras and GPS tracking, to verify that cameras remain operational throughout the ride and that drivers stay on the designated route to the passenger's destination. Lyft lacks a zero-tolerance policy for sexual misconduct and has permitted drivers reported for such misconduct to continue providing rides.

24.    Lyft does not mandate anti-harassment training for its drivers and fails to conduct thorough investigations into passenger complaints involving sexually inappropriate conduct or serious sexual assaults. Alarmingly, there exists an online chatroom for rideshare drivers in which participants openly discuss and boast about the access they have to "hot" young women. Despite Lyft's documented history

COMPLAINT FOR DAMAGES - 5

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

of employing sexual predators who have attacked passengers, and despite the evident subculture among some Lyft drivers who are sexually motivated to transport young female passengers, Lyft takes no steps to warn its female riders of this serious and foreseeable danger.

### Lyft's Financial Model

25.    The key to Lyft's business model is getting as many new Lyft drivers on the road as possible. The more drivers, the more rides, the more money Lyft makes. Unfortunately, because more careful screening and supervision would result in fewer drivers and lower profits, Lyft has chosen not to implement those necessary procedures.

26.    Lyft also has a high turnover among its drivers because they are not well paid and often move on to other jobs. As a result, and to maximize the number of drivers on the road, Lyft's business model is designed to accept as many new drivers as possible and to keep as many existing drivers working for Lyft as possible. Unfortunately, Lyft prioritizes profits over passenger safety. That is why Lyft corporate management has made deliberate decisions to adopt inadequate initial screening procedures, inadequate safety monitoring, and has failed to warn passengers of the dangers of riding with Lyft.

### Lyft's Control Over Its Drivers

27.    Lyft exercises significant control over its drivers. Lyft executives set the fare rates. Drivers have no input on the fares charged and no ability to negotiate fares with customers. Fees are standardized based on mileage and/or ride time, similar to taxis.

28.    Lyft collects a percentage fee for every ride. Lyft does not charge drivers a fee to become a Lyft driver and Lyft does not charge drivers to use the Lyft App.

29.    Lyft drivers are prohibited from answering passenger inquiries about booking rides outside of the Lyft App.

30.    Lyft has the power to terminate drivers with or without cause.

COMPLAINT FOR DAMAGES - 6

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

31.     Lyft drivers are expected to accept all ride requests while they are logged into the App. Lyft drivers who reject or cancel too many ride requests risk facing discipline, including suspension or termination.

32.     Lyft provides its drivers with and requires them to use and display Lyft branding materials to make their drivers easily identifiable as Lyft drivers.

33.     Lyft also allows passengers to provide comments to Lyft regarding their experiences with their Lyft drivers. These comments are not shared with other passengers. Passengers are not provided with any information regarding their driver other than a photograph, and other basic information about the car. Passengers are not informed about prior complaints concerning particular drivers.

33.     Within the app, Lyft does not tell passengers whether their comments regarding drivers are shared with drivers, resulting in a rideshare culture where passengers are fearful that giving honest negative feedback could negatively impact their passenger star rating – or result in retaliation from the driver.

### *Lyft's Failure to Monitor Rides*

35.     Given Lyft's knowledge of the sexual assaults and rapes of its passengers by Lyft drivers, the company should have implemented a monitoring system to protect its passengers. As a technology company with access to a state-of-the-art in-app tracking system, as well as a camera within the required mobile device, Lyft could take the following steps towards the elimination of sexual assaults by Lyft drivers:

• Adopt a zero-tolerance policy for improper conduct and inform all drivers of the policy;

• Maintain a surveillance camera and require its continuing operation during all rides;

• Save camera footage and make it accessible for up to 72 hours after each ride;

• Inform drivers that if they turn off the surveillance system during a Lyft ride, they will never

COMPLAINT FOR DAMAGES - 7

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

drive for Lyft again;

• Inform drivers that they may not leave the car and accompany a passenger to their home or to any other location outside the vehicle, other than to provide temporary and time-limited assistance to a passenger;

• Modify the functionality of the Lyft app so that Lyft can determine immediately if a driver deviates from these protocols;

• Monitor rides and implement a system whereby passengers are required to confirm their intention to terminate a ride before reaching their destination; and

• Monitor rides and implement a system whereby passengers are required to confirm their intention to change their destination or their intention to deviate significantly from the assigned route.

36.     The ongoing sexual attacks by Lyft drivers are and have long been known to Lyft. Prior to Plaintiff's assault, Lyft knew that a consequence of its business model has been exposing women, who rely on Lyft for a safe ride home, to drivers that may take advantage of their vulnerable position. Despite holding itself out to the public as being engaged in the safe transportation of its passengers from place to place for compensation, Lyft has failed to take reasonable precautions to attempt to prevent harm to its passengers.

37.     At the time of the actions alleged in this complaint, Lyft was aware of the established occurrence of sexual assault of its female passengers by its drivers but failed to take reasonable action to protect its passengers from these assaults and violations.

### Lyft's Misrepresentations as to Safety

38.     In addition to inadequate background check procedures, Lyft affirmatively induces passengers, particularly young, unaccompanied, intoxicated, and/or vulnerable women, to use its services with the expectation of safety, while Lyft simultaneously knows that sexual abuse of its passengers has

COMPLAINT FOR DAMAGES - 8

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

been prevalent.

39.    In February 2015, Lyft's website posted a blog post announcing it had partnered with It's On Us, an anti-sexual assault initiative, and offered free ride credits for new Lyft passengers during the Spring Break season, "making it easier to get a safe ride home even if you're in a new city." In November 2016, Lyft's website posted a blog post entitled "Get Home Safely with Lyft," again touting its partnership with It's On Us, and offering college students free Lyft rides so that they "don't need to worry about finding a safe ride after going out." The insinuation of these articles is that Lyft prevents, and does not create, the risk of sexual assault. Nowhere on Lyft's website does Lyft discuss the occurrence or risk of sexual assault by Lyft's drivers. As a result, many women, like Plaintiff, enter Lyft cars unaccompanied with the expectation that they will not be harassed, propositioned, kidnapped, attacked, stalked, raped, or worse, by their Lyft drivers.

40.    Further, Lyft does not report statistics about sexual harassment or sexual assault by its drivers. Lyft does not disclose its policies or procedures on dealing with sexual assault by its drivers. Lyft does not properly train its customer service representatives on how to deal with serious allegations of driver misconduct. As a result, passengers who report sexual abuse by a driver have been later matched with the same driver, and dangerous drivers continue to drive with Lyft and assault passengers while Lyft profits from their actions. At the time of Plaintiffs' attack, Lyft's guidelines for their drivers made no mention of sexual harassment or assault guidelines.

41.    In short, Lyft fails to follow reasonable safety procedures and intentionally induces passengers to use Lyft's services while in a vulnerable state. As a result, Plaintiff, and women like her, are attacked, sexually harassed, assaulted, and raped by Lyft's drivers.

### *Lyft's Inadequate Background Checks*

42.    Lyft relies on a quick, name-based background check process to screen its applicant drivers

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

and has continuously refused to adopt an industry-standard, fingerprint-based background check qualification process.

43.    Lyft's background check process requires drivers to submit personal identifiers (driver's license and social security number) through an online webpage. Lyft, in turn, provides this information to third party vendors to perform a basic, name-based background check.

44.    Neither Lyft nor the third-party vendors it uses for background checks verify that the information provided by applicants is accurate or complete. The turnaround time for a Lyft background check is typically between 3-5 days.

45.    The difference between name-based background checks and fingerprint-based background checks is significant. While a name-based background check searches the applicant's reported name against various databases and compares records that have the same name, a fingerprint-based background check (or biometric check) uses the fingerprints of the individual to match against a law enforcement database, comparing records that have the same print, even if the names are different.

46.    For example, most prospective taxi drivers are required by the taxicab companies to undergo criminal background checks that require the driver to submit fingerprints through a technology called "Live Scan." The fingerprint images are used to automatically search against all other fingerprint images in government criminal record databases, including databases maintained by state law enforcement and the Federal Bureau of Investigation (FBI). The FBI's database includes criminal record information from all 50 states, including sex offender registries. If a person has a criminal history anywhere in the U.S., it will register as a match.

47.    Fingerprints are not only a highly accurate way to confirm an individual's identity, but they are also universally used among state and federal government agencies. This allows for the highest levels of information sharing among all relevant agencies – an element that is lacking when fingerprints are not

COMPLAINT FOR DAMAGES - 10

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

1    used to verify identities.

2        48.    Because of the unique identifying characteristics of fingerprints, the Live Scan process

3    provides assurance that the person whose criminal history has been run is, in fact, the applicant. This

4    would ensure that a convicted rapist or sexual predator could not use a false identification to become a

5    Lyft driver.

6        49.    Name-based background checks, on the other hand, are limited and not easily shared

7    among the appropriate authorities. These name-based criminal background checks are performed on

8    publicly available databases and records from county courthouses, which are not linked to each other and

9    typically do not go back past seven years. Because the FBI database is not accessed, there is no true

10   national search performed, making these searches incomplete, limited and inaccurate.

11       50.    Name-based background checks present systematic, fundamental problems. First, there is

12   no way to positively identify a person via a biometric indicator, increasing the likelihood of fraud.

13   Likewise, because names, addresses and birthdays are not unique, the likelihood of false positives (a

14   person linked in error with another's record) and false negatives (someone getting cleared when they

15   should not) are greatly increased. For example, if an individual changes her name, or for some other

16   reason has a criminal history under a different name, the name-based checks can miss the individual's

17   criminal history.

18       51.    Lyft has refused to adopt fingerprint-based biometric checks and has in fact spent millions

19   of dollars lobbying against local regulations requiring these checks.

20       52.    Despite advertising to passengers that "Your safety is important" and "Safety is our top

21   priority," Lyft's background check process is designed for speed, not safety. In refusing to adopt

22   reasonable safety procedures, Lyft makes clear that its main priority is profit, not passenger safety.

COMPLAINT FOR DAMAGES - 11

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

## V.    THE ATTACK ON PLAINTIFF

53.    This suit arises from the serious harm Plaintiff suffered because of the wrongful acts and omissions of Defendants.

54.    On or about July 26, 2023, a Lyft ride was requested for Plaintiff through the Lyft App.

55.    Shortly thereafter, a car arrived with a Lyft light turned on and visible. The Plaintiff entered the Lyft driver's car.

56.    The Lyft driver took Plaintiff toward her intended destination without any discussion or agreement to deviate from the route or stop at any location other than that destination. Upon arriving at the Plaintiff's destination, the driver ended the trip within the Lyft application, and immediately activated the vehicle's child safety locks to trap Plaintiff inside. The Lyft driver sped away, driving erratically away from Plaintiff's destination.

57.    The Lyft driver parked at a secluded area and climbed into the back seat. At that time, the Lyft driver used his body to straddle and restrain Plaintiff. A struggle ensued, and the Lyft driver forced his penis into the Plaintiff's mouth for non-consensual oral copulation. During the sexual assault, Plaintiff struggled to breathe and lost consciousness.

59.    By failing to take reasonable steps to confront the problem of multiple rapes and sexual assaults of Lyft passengers by Lyft drivers, Lyft has acted in conscious disregard of the safety of its passengers, including Plaintiff, has breached its duty of reasonable care, and has breached the implied and express covenants arising from its contract with its passengers.

60.    The Lyft driver who assaulted Plaintiff perpetrated the above-described assault, harassment, and/or attack in the course and scope of his employment with Lyft and while he was under Lyft's direction and control. These acts caused Plaintiff severe pain and suffering that persist to this day.

61.    The Lyft driver who assaulted Plaintiff was acting on behalf of, for the benefit of, at the

COMPLAINT FOR DAMAGES - 12



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

direction of, and within the course and scope of employment with Lyft and engagement by Lyft. Lyft provided the Lyft driver with access to its ride-sharing app platform, a tool necessary for Lyft drivers to perform the work Lyft assigned. Lyft, through the Lyft App, directed the Lyft driver regarding the location of the pickup, time of the pickup, and routes for both the pickup of Plaintiff and transportation to her destination, and much more, as discussed below.

62.     The Lyft driver who assaulted Plaintiff was an agent or employee of Lyft, which is a common carrier. His duties were directed at the comfort and protection of passengers in his vehicle, including Plaintiff.

63.     Lyft derived a monetary benefit from every ride assigned to said Lyft driver through its Lyft App, including Plaintiff's ride during which she was assaulted.

64.     Lyft is a transportation company. Its core business is providing transportation to the public through its network of drivers. It connects its drivers to the public through the Lyft App. Anyone may download the Lyft App for free. Using the app, a customer may request a ride from one of Lyft's drivers for a standardized charge unilaterally set by Lyft. Lyft directs its drivers to pick up the passengers and transport them to their destinations.

65.     Lyft provides transportation through a digital application made available to the general public for the purpose of transporting its users—the passengers—from place to place for profit. Lyft has widely offered its services to the general public and charges standard fees for its services through its application. Lyft represents that it does not allow discrimination against passengers on the basis of race, color, national origin, religion, gender, gender identity, physical or mental disability, medical condition, marital status, age, or sexual orientation. Any member of the public can use Lyft's services for transportation.

66.     Lyft drivers are largely nonprofessional, untrained, and use their own vehicles. Lyft

COMPLAINT FOR DAMAGES - 13

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

employs and engages its drivers, including the driver who assaulted Plaintiff, in traditional at-will relationships, in which:

a. Lyft has discretion to fire its drivers for any reason and at any time; that is, Lyft maintains the right to discharge its drivers at will, and without cause;

b. Lyft drivers are not charged a fee by Lyft to apply to become employees;

c. At all times relevant, there was no agreement between Lyft and the driver designating the driver as an independent contractor;

d. Lyft drivers are not charged a fee to download the app or to receive notifications from Lyft that customers want rides;

e. Fare prices for rides are set exclusively by Lyft;

f. Lyft drivers have no input on fares charged to consumers;

g. Lyft drivers are not permitted to negotiate with consumers on fares charged;

h. Lyft drivers do not know what riders are charged for a given ride;

i. Lyft can and does modify charges to consumers; for example, if Lyft determines that a driver has taken a circuitous route to a destination;

j. Lyft takes a fee of every ride charged to a consumer;

k. Lyft retains control over customer-contact information;

l. Lyft controls its drivers' contacts with its consumer base and considers its consumer list to be proprietary information.

m. In some instances, Lyft controls the hours a driver works;

n. drivers are not permitted to answer passenger inquiries about booking future rides outside of the Lyft App;

o. Driving for Lyft is not a specialized skill;

COMPLAINT FOR DAMAGES - 14

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

p. Lyft's business model depends on having a large pool of non-professional drivers;

q. Lyft drivers must abide by a list of regulations to drive for Lyft;

r. Lyft requires its drivers to pick up Lyft customers on the correct side of the street;

s. Lyft forbids its drivers from talking on their cell phones while driving customers;

t. Lyft tracks drivers' speed and braking and sends drivers reports based on how many times the driver had to brake hard;

u. Lyft drivers are not allowed to ask Lyft customers for their contact information;

v. Lyft drivers who reject ride requests risk discipline, including suspension or termination from the platform;

w. Lyft handles any and all consumer questions and concerns following the completion of a ride;

x. Lyft investigates consumer complaints regarding a Lyft ride;

y. Lyft makes drivers aware of the passengers' ultimate destination only after the ride has begun;

z. Lyft controls the route taken by its drivers by providing turn by turn navigation from pick-up to a rider's final destination;

aa. Consumers give feedback on rides they have taken and rate drivers on a scale from one star to five stars. These ratings are used by Lyft to discipline and terminate drivers; and

bb. Such other acts of control that discovery will show.

67.     Lyft actively markets itself as a safe company that provides safe rides. Both before 2014 and after, Lyft actively and aggressively marketed the supposed safety of its transportation services. These efforts continue to this day, and include email messages sent to every Lyft customer, including

COMPLAINT FOR DAMAGES - 15

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

Plaintiff.

68.     Over the years, Lyft has launched marketing campaigns specifically marketing its transportation services to, among others, young women too intoxicated to drive.

69.     Lyft actively and publicly markets its transportation services to be safe and reliable services.

70.     Lyft actively and publicly markets its transportation services to be safe and reliable during late-night hours.

71.     Lyft has cultivated an image among its customers of safety and superiority to public transportation and traditional taxis. Because of aggressive marketing, most Lyft customers are generally unaware of the real risks associated with Lyft rides and continue to believe a ride with Lyft is a safer and better alternative.

72.     Riders, including Plaintiff, reasonably rely on Lyft's representations and promises regarding safety and security measures. Riders, including Plaintiff, choose to ride with Lyft as a result of this reliance.

73.     Lyft markets its ride hailing service to female riders as a safer alternative to traditional taxis.

74.     The safe image that Lyft aggressively cultivates suggests to customers, including Plaintiff, that riding while intoxicated with Lyft is safe. Lyft does not inform riders, like Plaintiff, that hailing a ride after drinking puts riders in peril from the drivers themselves. By marketing heavily to young women who have been drinking, and promising safe rides, Lyft puts riders in peril.

75.     Lyft knew its representations and promises about rider safety were false and misleading yet continued to allow riders to believe in the truth of these representations and promises and continued to profit from riders' reliance on those representations and promises.

COMPLAINT FOR DAMAGES - 16

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

76.     Lyft employs a vast network of drivers. But, at all relevant times, Lyft provided its drivers with inadequate training regarding sexual assault, sexual relations, sexually inappropriate behavior, sensitivity, and customer relations.

77.     Lyft has also provided inadequate background checks and screening of its drivers. Among other things, it does not fingerprint its drivers (unless forced to do so by state or local laws), and it does not run the applicant drivers against all available public databases.

78.     Lyft lobbies state and local governments to limit what is required of Lyft with respect to driver background checks. Lyft also lobbies local government entities to continue allowing Lyft to perform its own background checks of its driver applicants, rather than municipalities performing the more stringent and reliable screening they conduct for traditional taxi drivers.

79.     Lyft has successfully persuaded lawmakers in several states to keep background check requirements for its drivers limited.

80.     As a direct result of Lyft's lobbying efforts, those entities largely self-enforce hiring standards for their drivers. In cities where municipalities perform the screening, such as in Houston, Texas and Seattle Washington, hundreds of driver applicants Lyft approved are ultimately rejected by the municipality.

81.     Even where authorized to do so, Lyft generally does not perform driver background checks and instead outsources the checks to a third-party vendor that often limits the extent of its background check and that does not verify the information provided by the applicant is accurate or complete. The turnaround time for a Lyft background check is often under 36 hours. The application process to become a Lyft driver is simple, fast, and designed to allow the company to hire as many drivers as possible while incurring minimal associated costs. Lyft fought for and implemented a less robust hiring process knowing it would be at the expense of passenger safety.

COMPLAINT FOR DAMAGES - 17

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

82.     Although Lyft claims its drivers are not employees, Lyft engages its drivers as part of its business, exerts significant control over those drivers, and the Lyft drivers are charged with the responsibility of safely transporting Lyft passengers to their destination.

## VI.    CLAIM 1: GENERAL NEGLIGENCE

83.     Plaintiff incorporates all prior allegations.

84.     By providing transportation to the general public using its application and network of drivers, Lyft owed a duty to act with due and reasonable care towards the public and in particular its own passengers, including Plaintiff.

85.     Lyft has been on notice that its drivers have been sexually harassing, sexually assaulting, and raping its passengers since at least 2015. Lyft was aware or should have been aware that some Lyft drivers would continue to sexually assault, stalk, harass, kidnap, physically assault, rape, and/or otherwise attack their vulnerable Lyft patrons and passengers.

86.     Since learning of the sexual assaults perpetrated by its drivers, Lyft never adapted or improved its safety procedures in any meaningful way.

87.     Lyft does not require video monitoring of its drivers that cannot be turned off, nor does it provide emergency notification to law-enforcement authorities when a driver drastically veers off course from the passenger's destination, abruptly cancels the ride, or ends the ride at the intended destination but GPS data indicates the passenger remains in the car for a significant period of time.

88.     At all times relevant, Lyft was well aware of the dangers its drivers posed, yet it still induced, and continues to induce, the public, including Plaintiff, to rely on Lyft as a safe means of transportation. In doing so, Lyft failed to warn passengers, including Plaintiff, of the possibility of being assaulted, battered, harassed, and/or otherwise attacked by a Lyft driver.

89.     At the time Plaintiff was assaulted, Lyft did not require sexual harassment/assault training

COMPLAINT FOR DAMAGES - 18

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

for its drivers, nor did it have any policies in place for immediate termination if a driver engages in sexual misconduct.

90.     Lyft does not cooperate with the police when a driver commits an illegal sexual attack on its passengers. Despite having the express right to disclose driver information at Lyft's sole discretion, Lyft requires that extensive standards be met before the company will even consider law enforcement requests for information. Even after a report of sexual assault has been made, Lyft generally requires a subpoena before it will release information. Lyft's policy of noncooperation discourages police agencies from making recommendations to local prosecutors to file complaints against Lyft drivers and provides Lyft's predatory drivers with tacit assurance that their illegal attacks will not be detected by law enforcement.

91.     When hiring new drivers, Lyft does not verify driver identities with biometric background checks. Lyft does not correct for false negatives created by its name-based screening procedures. Lyft does not provide industry-standard background checks that would provide the most comprehensive means of screening applicant drivers. Lyft does not invest in continuous monitoring of its drivers and is not immediately alerted when one of its drivers is implicated in criminal acts.

92.     Lyft does not have a consistent, reliable system for addressing passenger reports of sexual assault by its drivers and continues to let dangerous predators drive for and earn money for Lyft.

93.     For the above reasons and others, Lyft breached its duty of reasonable care to Plaintiff.

94.     As a legal and direct result of Lyft's actions and omissions, Plaintiff was assaulted, battered, harassed, and/or otherwise attacked by a Lyft driver, which humiliated, degraded, violated, and robbed Plaintiff of her dignity and personal safety. The assault on Plaintiff caused her to suffer psychological and physical harm from which she may never fully recover.

95.     As a direct and proximate result of Defendants' general negligence, Plaintiff suffered

COMPLAINT FOR DAMAGES - 19

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

economic and non-economic damages.

96.    Plaintiff will seek damages based on Defendants' above described actions, which evidence wanton and reckless disregard for the safety of passengers like Plaintiff.

## VII.    CLAIM 2: NEGLIGENT HIRING, RETENTION, AND SUPERVISION

97.    Plaintiff incorporates all prior allegations.

98.    Lyft engaged and retained or otherwise employed the Lyft driver who assaulted, harassed, and/or otherwise attacked Plaintiff as described above.

99.    Lyft did not interview, check the references of, provide training to, or advise the Lyft driver of any anti-sexual assault policies when hiring him. Lyft had no reasonable basis for believing Lyft drivers in general were fit to drive vulnerable women around, particularly at night, and failed to use reasonable care in determining whether the driver in question was fit for the task. Lyft should have known of the unfitness of the Lyft driver involved in the assault on Plaintiff but failed to use reasonable care to discover his unfitness and incompetence.

100.    Despite failing to reasonably endeavor to investigate the incompetence of Lyft drivers, including the one who harmed Plaintiff, for transporting vulnerable and/or intoxicated women in a moving vehicle, Lyft hired said driver to do exactly that.

101.    Lyft knew or should have known that assigning the task of transporting vulnerable passengers to an inadequately screened driver created an unreasonable risk of harm to Lyft's passengers, including Plaintiff, particularly when Lyft had been on notice of the string of sexual assaults committed by Lyft's drivers.

102.    Lyft failed to employ measures to adequately supervise its drivers.

103.    Lyft failed to adequately record, investigate, and respond to passenger reports of unsafe conduct such as sexual harassment and sexual assault by Lyft drivers.

COMPLAINT FOR DAMAGES - 20

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

104.    Lyft was negligent in failing to terminate drivers it knew or reasonably should have known were a threat to passengers, including but not limited to Plaintiff and other vulnerable female passengers traveling alone.

105.    The Lyft driver who assaulted Plaintiff was, and/or became, unfit to perform the work for which he was hired as he improperly and illegally took advantage of Plaintiff when she attempted to use the service for a safe ride to her destinations, which caused her psychological and/or physical harm.

106.    Because of the Lyft driver's unfitness to perform the task of transporting Plaintiff, Plaintiff was forced by him to perform oral copulation, which humiliated, degraded, violated, and robbed Plaintiff of her dignity and personal safety.

107.    Lyft's negligence in hiring, retaining, and or supervising Lyft drivers, including the driver who harmed Plaintiff, caused Plaintiff to be assaulted, battered, harassed, and/or otherwise attacked by the Lyft driver, which humiliated, degraded, violated, and robbed Plaintiff of her dignity and personal safety. The depraved attack on Plaintiff caused Plaintiff to suffer physical and/or psychological harm from which she may never fully recover.

108.    As a direct and proximate result of Defendants' negligent supervision, hiring, and retention of Lyft drivers, including the driver who harmed Plaintiff, Plaintiff suffered economic and non-economic damages.

109.    Plaintiff will seek damages based on Defendants' above described actions, which evidence wanton and reckless disregard for the safety of passengers like Plaintiff.

### VIII.    CLAIM 3: COMMON-CARRIER NEGLIGENCE

110.    Plaintiff incorporates all prior allegations.

111.    At the time Plaintiff was sexually assaulted, Lyft was a common carrier under the Revised Code of Washington Section 81.04.010(11) and under Washington common carrier law as it provided



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

transportation, generally and indifferently, to the general public for hire.

112.    Lyft provides transportation through a digital application and transportation network made available to the general public, generally and indifferently, for the purpose of transporting its users, the passengers, from place to place for profit. Lyft has widely offered its services to the general public and charges standard fees for its services through its application. Lyft represents that it does not allow discrimination against passengers on the basis of race, color, national origin, religion, gender, gender identity, physical or mental disability, medical condition, marital status, age, or sexual orientation. Any member of the public can use Lyft's services for transportation.

113.    As a common carrier, Lyft must carry its passengers, including Plaintiff, safely.

114.    Lyft has a duty to employ the utmost degree of care and diligence that would be expected of a very cautious company. Lyft has a duty to do all that human care, vigilance, and foresight reasonably can do under the circumstances to avoid harm to passengers, including Plaintiff.

115.    Lyft must use reasonable skill to provide everything necessary for safe transportation, in view of the transportation used and the practical operation of the business.

116.    Despite complaints to Lyft of physical and/or sexual assaults committed by Lyft drivers and lawsuits against Lyft for physical and/or sexual assault, to this day Lyft has failed to implement safety precautions that would adequately address its assault problem.

117.    Lyft does not provide a consistent and reliable way for passengers to report physical and/or sexual abuse.

118.    Lyft does not warn passengers of the dangers of riding with Lyft and fails to warn passengers of past complaints regarding Lyft drivers.

119.    Lyft does not have an effective program in place to deal with the sexual-predator crisis posed by some of its drivers.

COMPLAINT FOR DAMAGES - 22

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

120.    Lyft knows its female passengers are in a uniquely vulnerable situation enclosed in a moving vehicle and that a subset of its drivers are sexual predators.

121.    Lyft has not exercised reasonable care to protect its passengers from harassment and assault by Lyft's drivers.

122.    Lyft has not exercised the utmost degree of care in order to protect its passengers from the danger posed by sexual predators who drive for Lyft. If Lyft had used the highest degree of care, Lyft could have prevented or dramatically reduced the likelihood of the physical and/or sexual assault of its passengers, including Plaintiff.

123.    Lyft failed to safely transport Plaintiff.

124.    Lyft failed to use the utmost care and vigilance to protect Plaintiff from its own driver who forced oral copulation while she was supposed to transported safely by Lyft.

125.    Lyft has an affirmative duty to protect its passengers from assault by its employees or agents and is liable for its employees' or agents' assaults, regardless of whether such acts were committed within the course and scope of employment for Lyft.

126.    Lyft failed to take reasonable precautions to protect its vulnerable female passengers, including Plaintiff, from the foreseeable and known risk of assault and/or harassment by its drivers. If Lyft had used the highest degree of care, Lyft could have prevented or reduced the likelihood of the sexual assault of its passengers, including Plaintiff.

127.    As a legal and proximate result of Lyft's actions and omissions of Lyft, Plaintiff was forced to perform oral copulation, which humiliated, degraded, violated, and robbed Plaintiff of her dignity and personal safety. The depraved attack on Plaintiff caused Plaintiff to suffer physical and/or psychological harm from which she may never fully recover.

128.    As a direct and proximate result of Lyft's negligence as a common carrier, Plaintiff suffered

COMPLAINT FOR DAMAGES - 23

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

economic and non-economic damages.

129.    Plaintiff will seek damages based on Defendants' above described actions, which evidence wanton and reckless disregard for the safety of passengers like Plaintiff.

### IX.    CLAIM 4: INTENTIONAL MISREPRESENTATION

130.    Plaintiff incorporates all prior allegations.

131.    Lyft represented to Plaintiff and the general public that safety was Lyft's top priority, and it was Lyft's goal to make every ride safe, comfortable, and reliable. At the same time, Lyft already knew that a number of its drivers had preyed on vulnerable female passengers by sexually molesting, assaulting, harassing, and/or raping them.

132.    Lyft made intentional misrepresentations of fact to all users of the Lyft App, including Plaintiff, that were known by Lyft to be false including the false statements Lyft made, stating it would provide Plaintiff with a safe ride to her destination.

133.    These representations regarding safety were made to Lyft customers, including Plaintiff, through periodic emails Lyft sent to its customers, social-media advertisements, and Lyft's own website and app. Plaintiff relied upon several advertisements and statements where Lyft proclaimed it would provide a safe ride.

134.    Prioritizing profits over passenger safety, Lyft made these intentional misrepresentations of material fact to induce women, including Plaintiff, to use Lyft's services.

135.    Lyft made these representations to Plaintiff and the general public despite knowing it had chosen not to take the measures necessary to provide a safe ride to her intended destination and, as a result, continued physical and/or sexual assault of its passengers by its drivers was a foreseeable occurrence.

136.    Lyft made these representations to induce women, like Plaintiff, to use Lyft's services and

COMPLAINT FOR DAMAGES - 24

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

to derive profit from women like Plaintiff.

137.    In entering a Lyft vehicle, Plaintiff reasonably relied on Lyft's representations that it would get her safely to her destination.

138.    In trusting and relying on Lyft's representations, Plaintiff was placed in a uniquely vulnerable position that was taken advantage of by the Lyft driver who forced Plaintiff to perform oral copulation.

139.    As a direct and proximate result of Lyft's intentional misrepresentations, Plaintiff was forced to perform oral copulation by the Lyft driver, which humiliated, degraded, violated, and robbed Plaintiff of her dignity and personal safety. The depraved attack on Plaintiff caused Plaintiff to suffer physical and/or psychological harm from which she may never fully recover.

140.    As a direct and proximate result of Lyft's intentional misrepresentations, Plaintiff suffered economic and non-economic damages.

141.    Plaintiff will seek damages based on Defendants' above described actions, which evidence wanton and reckless disregard for the safety of passengers like Plaintiff.

## X.    CLAIM 5: IN THE ALTERNATIVE: STRICT PRODUCT LIABILITY BASED ON DESIGN DEFECT OF THE LYFT APP (RCW 7.72.030)

142.    Plaintiff incorporates all prior allegations.

143.    Lyft manufactured and distributed the Lyft App.

144.    The Lyft App did not perform as an ordinary consumer would have expected it to perform when used or misused in an intended or reasonably foreseeable way, because the Lyft App falsely led Plaintiff to form a reasonable minimum safety expectation that was not met.

145.    The Lyft App did not include safety features such as a GPS tracking system that would alert Lyft to the early termination of a ride, substantial deviation from the intended route, or a passenger continuing to travel in the Lyft vehicle after the driver ended the ride in the App. It also did not include

COMPLAINT FOR DAMAGES - 25



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

the automatic activation of the camera in drivers' smart phones when a ride is in progress. And it did not include automatic notification of law enforcement of suspicious circumstances that suggest a rider may be in danger.

146.    The Lyft App also failed to communicate with Plaintiff a true expectation of the lack of safety in using Lyft.

147.    These flaws in the design of the Lyft App, were a substantial factor in causing harm to the Plaintiff, including being forced to perform oral copulation by the Lyft driver, which humiliated, degraded, violated, and robbed Plaintiff of her dignity and personal safety. The depraved attack on Plaintiff caused Plaintiff to suffer physical and/or psychological harm from which she may never fully recover.

148.    As a direct and proximate result of Lyft's acts and omissions, Plaintiff suffered economic and non-economic damages.

149.    Plaintiff will seek damages based on Defendants' above described actions, which evidence wanton and reckless disregard for the safety of passengers like Plaintiff.

## XI.    CLAIM 6: IN THE ALTERNATIVE: STRICT PRODUCT LIABILITY - FAILURE TO WARN (RCW 7.72.030)

150.    Plaintiff incorporates all prior allegations.

151.    Lyft manufactured and distributed the Lyft App.

152.    The Lyft App presented potential risks of introducing each driver to a passenger who, because of the nature of the ridesharing arrangement created and facilitated by the Lyft App, could neither escape from the Lyft driver's vehicle nor control the place where the driver would take the passenger, which could result in the sexual assault of that passenger; these are risks that were known or knowable at the time of manufacture and distribution of the Lyft App.

153.    The potential risks presented a substantial danger when the Lyft App was used or misused

COMPLAINT FOR DAMAGES - 26

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

in an intended or reasonably foreseeable way.

154.    Ordinary consumers such as Plaintiff would not have recognized the potential risks.

155.    Defendant Lyft failed to adequately warn consumers, including Plaintiff, of these potential risks.

156.    Lyft's failure to provide passengers, including Plaintiff, with sufficient warnings regarding the risk of harm to which they were being exposed with each Lyft ride was a substantial factor in causing the harm suffered by Plaintiff, including being forced to perform oral copulation by a Lyft driver which humiliated, degraded, violated, and robbed Plaintiff of her dignity and personal safety. The depraved attack on Plaintiff caused Plaintiff to suffer physical and or psychological harm from which she may never fully recover.

157.    As a direct and proximate result of Lyft's acts and omissions, Plaintiff suffered economic and non-economic damages.

158.    Plaintiff will seek damages based on Defendants' above described actions, which evidence wanton and reckless disregard for the safety of passengers like Plaintiff.

## XII.    PRAYER FOR RELIEF

Plaintiff prays for the following relief:

- • That the Court Enter of judgment on each of her claims against Defendants jointly and severally;

- • That the Court award Plaintiff monetary relief to include all past and future economic and non-economic damages including physical pain, mental

    anguish, anxiety, medical expenses, lost earnings or earning capacity;

- • That the Court award Plaintiff Pre- and post-judgment interest;

- • That the Court award Plaintiff her costs, reasonable attorney fees, and any statutory interests

COMPLAINT FOR DAMAGES - 27

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624

applicable under law or equity;;

That the Court award such other relief, under law or equity, as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: January 27, 2026

Respectfully submitted,

*/s/Michael T. Pfau*
**PFAU COCHRAN VERTETIS AMALA, PLLC**
Michael T. Pfau, WSBA No. 24649
Denise Chen, WSBA No. 59906
701 Fifth Avenue, Suite 4300
Seattle, WA 98104
Tel: (206) 451-8260
Fax: (206) 623-3624
mike@pcvalaw.com
*Attorney for Plaintiff*

*/s/ Sommer D. Luther*
**WAGSTAFF LAW FIRM**
Sommer D. Luther, CO 35053*
940 Lincoln Street
Denver, CO 80203
Tel: (303) 263-8949
Fax: (303) 376-6361
sluther@wagstafflawfirm.com
*Attorney for Plaintiff*
*To Be Admitted Pro Hac Vice*

COMPLAINT FOR DAMAGES - 28

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

701 Fifth Avenue, Suite 4300
Seattle, WA 98104
(206) 462-4334 | Fax: (206) 623-3624